Frank Weiser on behalf of the appellants. I wanted to concentrate first on the question of the jury instruction dealing with the appearance of bias issue. It appears to me that the Caperton v. Massey decision that was decided just recently, last term, while this appeal was pending, clarifies and changes both this circuit's law and ratifies what I think I objected to at the time of the trial as far as how the jury instruction on the appearance of bias issue should be formulated. First of all, I just want to state as far as the facts, and I think I'm concentrating more on the Bradshaw issue, Danny Bradshaw was the planning commissioner. He was the son of Billy Bradshaw, who was a council member, and he testified, his father testified, he didn't remember whether his son actually testified adversely against Mr. Sinclair as far as revocation of his CUP, but Danny Bradshaw stated in the record, and I think that's in page 572, 573, that he did testify that Mr. Sinclair was not in his, he was not complying with the CUP conditions and that the CUP should be revoked. And I thought that raised the issue of the appearance of bias, that Billy Bradshaw should not have sat and decided the issue if they were going to accept evidence from his son. At the time of the trial, the jury instruction stated that for the appearance of bias, we had to demonstrate that he had either a pecuniary interest, direct pecuniary interest, in the outcome of the proceeding, or a personal stake in the outcome of the proceeding. And I object to that. Is it a stake? Is it a stake? A personal outcome in the proceeding. Well, as I understand the jury instruction, it doesn't really say stake. My worry here is what's the standard of review for these jury instructions? Well, what do I, what is my standard? What do I, can I do in relation to them? I mean, how do I review them? Well, I think. Don't I do them on an abuse of discretion? I think that is correct. And in an abuse of discretion, what do I have to look at? I think here. The totality of what happened in all of the jury instructions. But I think the abuse of discretion here was a question of law and not a question of fact. It's undisputed that Bradshaw testified at the time of the proceeding. So that's not the question. The question is what is the proper formulation under the law of what an appearance of bias claim is required to have. And the Caprican decision, I think, has decided now that that's an objective test. It's not a subjective test. They've clarified that. And they formulated it, I think, exactly the way I believe I objected at the time of trial. That is, if the circumstances are such that it would be, raise the issue that it would be likely that the judge would not be neutral or create an unconstitutional risk or potential bias, that is the issue of an appearance of bias. The problem I have is, is that Judge Snyder stated in the motion for judgment as a matter of law, she cited the Crater v. Galarza decision that came out of the circuit, which limited it to three circumstances. And those three circumstances may very well be appearance of bias, but they're not limited to those circumstances. And the test that the Supreme Court has decided now in the Caprican decision is more in accord with the flexible notion of due process. You can't just limit it to a mechanical test. Well, I guess my worry is that at the time that the instructions were given, we had in front of us Stivers v. Pierce. We had no model jury instructions as to these particular matters. And what I've got to do is I've got to suggest to myself that the jury instructions which were given here are an abuse of discretion given the totality of the circumstances that are in this particular case. Now, I guess when one looks at the very instruction he gave, which is he may introduce evidence of a decision maker's financial or personal interest in the outcome of the hearing, I'm trying to think why this particular matter does not fall well within the financial or personal interest of any one of these council members. Well, I don't know if you can state that just because the son testified and the father adjudicated that that's a personal interest in the outcome. Well, I argued in my opening brief that as an alternative, the evidence, if it is undisputed that the father accepted evidence from his son, that that would be a personal interest. But I think the better clarification is that there should have been a broader instruction that would have let the jury decide just on the more objective test. I'm having a little trouble just understanding the logic. You wanted to show there was a personal interest here, right, under any test, because it is personal. It's his son. That's the personal aspect, right? That's where you think that the evidence that the jury should have found appearance of bias would be established if we're focusing on Bradshaw. The only evidence of bias is that, in that regard, as I understand it, is that his son, with whom he obviously has a personal relationship, went out and did an investigation and then testified at the hearing. So what is a more direct personal interest than that? Objectively speaking, it's on its face that it's a personal interest. Well, if the Court takes that view, I used it as an alternative. But if the Court, because I didn't see it as necessarily a direct personal interest, the problem I had with that is that that tends more to a subjective test and more the issue of whether there's actual bias. And that's what I think the Supreme Court in Caperton was trying to limit. What would you have argued to the jury under a Massey or Caperton instruction about that particular relationship? Whether he has a personal interest or not, whether it's actual bias or not, a judge should not hear evidence when his son or her son or daughter testifies. And it testifies adversely. It doesn't matter whether he has a personal interest in the outcome of the proceeding. It just raises an issue that this is something that would likely lead to actual bias. What's the standard? I mean, you want to, you're talking about a circumstance. But what's the umbrella that the jury would be asked to consider if it weren't a personal interest? If one of the witnesses is, if you're a juror and, potential juror, and one of the witnesses is going to be your son, I suppose you. I think the standard is exact. First of all, I just want to say. It seems to me that what you're really arguing, and that's the worry that I have, because I have a standard of review. It seems to me what you're really arguing is if a son is going to testify, you're out automatically. The jury has no chance to even look at it. Because what I'm trying to shape to you so that you can give me a good answer seems to me that even if the instructions were not exact, not having anything else to look at, but crafting these instructions, I have to say, given the totality of the circumstances, what we have here, giving the judge all the discretion he needs, given this circumstance, is it outside of the purview for him to have said personal interest, which I think covers all of the things you're now suggesting are problems. And I'm trying to say what would be better. Well, I would say what would be better is the exact formulation as the Supreme Court formulated in Caperton. What would you have argued to the jury that would be different? Yeah, that's it. What would I argue to the jury that would be different? What would you have argued on the facts? I would argue that the fact that the son had testified adversely is not necessarily that the father had a personal interest in the outcome of the proceeding, but it raises the risk, the unconstitutional risk, that he may be actually biased. But that doesn't mean he's actually personally interested. As I understand personal interest in outcome proceedings, the Caperton case gave the classic example. That would be a case of where a judge was sitting on a case with an insurance company and in another case was a plaintiff against that insurance company and had a direct personal interest in the outcome of the proceeding. But here, it may very well be that. Were you foreclosed by the instructions from arguing? You tried this case? I tried the case, and I not only. Were you foreclosed from arguing your theory to the jury that, I mean to the court here, well, it went to the jury, that Councilmember Bradshaw was biased because his son was a witness? Well, I think what the Supreme Court's decision. I'm asking whether you, in fact, on this jury instruction, were you disabled from arguing to the jury, which you've just told us you would have made with the Caperton instruction? I argued that there was bias in the proceeding, and I argued there was an appearance of bias in the proceeding. And because with respect to Bradshaw, what did you argue? With respect to Bradshaw, I argued that there was an appearance of bias because the father had sat where his son had given evidence. And in fact, it seemed to me that the instruction limited it such that the jury could find that he didn't have a direct personal interest in the outcome of the proceeding. And he didn't have a pecuniary interest. But what I was saying is that's not all the permutations. If the court is taking. In effect, the jury should have been able to, under a Caperton instruction, as you're putting it, should have been able to say because it was his son, he had a personal interest in this decision, not so much in the outcome, but because he had a personal relationship. That's correct. That's a fairly subtle distinction, though, isn't it? It is, but I think the jury needs to have some clarification if they think it's only limited to that. But, again, the implication of the personal relationship is that he's going to have a personal interest in the outcome that his son is advocating for. He may. And he may not. I mean, it seems to me, and I use a crude example, if Judge Pregnison were to sit on a case, I don't think he would, where his son had a case before the court, that anybody would argue that he has a personal interest in the outcome of the proceeding. Why not? It would seem to me. That's the whole point. That's the whole point. That's exactly the point. But if the court would allow me to clarify. The Caperton decision, as I read it, was an issue where Blankenship had contributed to his campaign. And the question was whether that would somehow influence, there could be a likelihood of influence. That he would vote for the side that his relationship. But I read the decision in such a way that they were trying to say that there is not a limitation to the traditional cases of what the personal interest in the outcome of the proceeding. The problem I had, and I just wanted to, Judge Smith's issue of CIFRS and the abuse of discretion standard. It seems to me, as I understand it, when there's a pending Supreme Court case, and that changes the standard as far as the objective test. It clarifies it. It's retroactively applied automatically anyway as a matter of law. And the other thing is I did object at the time of trial that there was language in CIFRS that supported my position. But I don't think it was clear. And that was what occurred. Do you want to address any other issues? Sure. Because you're running out of time. As far as the private taking issue, I seriously disputed with Judge Snyder's conclusion that there was not a deprivation as a per se taking. The jury never reached the issues of diminution of value or whether it was an unconstitutional taking. The only issue it decided was there was not a taking of private property. And there were instructions that clearly said that the CUP was taken, there was a deprivation, and the CUP, I would argue, is private property under this Court's very clear case law. And the question then only becomes whether the deprivation of the CUP is unconstitutional, and that led to the loss of the motel or whether it was a lost motel. It may very well be that Judge Snyder is correct that a jury would have concluded otherwise had it reached the other issues about there wasn't an unconstitutional taking. I argued, of course, there would be. Why is it a taking if they simply exercise their right to rescind the CUP? It's a deprivation of property. It's protected under due process. Well, I know. And there were instructions that said that due process protected it, and there was a deprivation. So I mean... Well, but due process only accords you notice and hearing, and I guess I'm still trying to figure out then why I think his question is very appropriate. You ought to answer it. The due process principle under the 14th Amendment specifically incorporates... That I understand, but you have a conditional use permit, which can be revoked, okay? And if they go through the procedures and they exercise the procedures, give you notice, they exercise their judgment, then it's not a taking. It's not a taking. It's not one that requires... They've now exercised it properly. You're not then entitled to compensation because they decided legitimately to revoke your... I didn't argue. I wasn't arguing that it would necessarily require compensation. What I was arguing is that there's a taking, and the question of a compensation is whether it's an unconstitutional taking, not whether it's a constitutional deprivation. Okay. All right. You're into the red. Thank you. Okay. May it please the Court. My name is Sean Swinford. I represent Pele's City of Needles and Danny Brad... I'm sorry, Billy Bradshaw. He's your client. There are two, and I confused them entirely through the case. I think it's actually Danny, Danny Bradshaw. That's correct. I had a little trouble with that. That seems to be the name of this case here. Well, I guess I'll start by addressing the Caperton decision. And I'd like to point out that it does not appear to me at this point that Stivers is bad law or that it's been overruled or, in fact, was even mentioned by the Caperton court. And so I don't think that Caperton... They don't always reach out to nail us. Just because it's us. Fair enough. And, well, I would note that Westlaw does not recognize an overruling or a distinction made on the case for what that's worth. The other problem that I think appellants have in pointing to the Caperton decision is that it did involve a pecuniary interest. And in this case, I don't think that there was ever even an argument made that Mr. Bradshaw or Mr. Murch had a pecuniary interest in the outcome of the case. I do not believe that appellants' counsel was restricted or prevented from making the arguments that he wanted to make, that those two counsel members had an appearance of bias or appeared to be biased based on their role in the revocation proceedings. And along those lines, I do believe that the jury instructions and verdict form that were used gave the jury that opportunity to find that an appearance of bias was something that required either or both of those counsel members to recuse themselves from the revocation proceedings. The idea that Mr. Bradshaw, Danny Bradshaw, acted in the investigatory process or that he saw the conditions that were present at the motel, I don't think that necessarily rules him out because there are a number of cases, I think Withrow v. Larkin being one of the first to recognize that the mere fact that and we're talking here about an adjudicator and Danny Bradshaw was not even that. He was a witness. But to the point, the cases show that there's not an automatic recusal required by the fact that somebody is both an investigator and an adjudicator. Let me move to a different point. There was a hearing where a CUP was granted. Appellants weren't given any notice, personal notice of that hearing at all. And the best I can tell from the record is that the city council said you can have another hearing? Well, that's correct, Your Honor. Is that enough under our case law to suggest that they did not have some constitutional problem of due process, you can have another? Or isn't that post-adjudicative action which is not enough? Well, I think there are a couple of responses to Your Honor's question. The first is that I guess initially I would argue that he did have notice of and an opportunity to be heard regarding the conditions that were eventually placed in the CUP at a November 2003 planning commission hearing which he was present at, which the conditions of the CUP were discussed during. And so I think that at some level he did have an opportunity to be heard. The other part of my response to Your Honor's question would be that, yes, offering to twice place the matter back on the city council agenda and having no response from Mr. Sinclair was adequate post-adjudicatory. Is it a post-adjudicatory action by the council or what is it? Well, I think it's probably difficult to classify. There's no statute that I'm aware of where the post-adjudicatory process is spelled out as far as what's required or what needs to be given. If they placed it on the agenda, would that by virtue of being placed on the agenda, would that have revoked the original decision? So they would have then had to take new action? Or is it more in the nature of we'll give you a chance to now come in and argue your case, persuade us to undo the decision? Your Honor is referring to the two posts? Yes. Okay. I don't know that it was placed on the... It wasn't placed on the agenda. I know what would have been the effect. Is there any process? What does it mean to, you know, was the offer in effect to say, all right, we'll just do it over. We'll start from scratch. Or was it it's going to stand unless you persuade us otherwise? Well, I think that this is basically the only evidence on the issue, and that is that the acting city attorney who had been in contact with Mr. Sinclair throughout the CUP approval hearing offered on two occasions to put the matter back on the city council. Now, we know that from a letter that was written by the city of Needles city attorney, and we don't know what Mr. Sinclair's response was or could have been. All we know is that, according to the city attorney, they offered on two occasions to put it back on, and he did not avail himself of that opportunity. Well, at the first... Let me understand this. Originally the council decided that you'd have to have a conditional use permit to rent rooms to people for more than a certain period of time. Is that right? That's accurate. And then they approved this application for a CUP. Is that right? That's correct as well. And then, almost a year later, they revoked it? That's correct. And he had notice of that? He certainly had notice of the... There were three different hearings at which the revocation was considered. I don't think the Ed Appellants Council would contend that Mr. Sinclair did not have notice of the revocation hearings themselves, and he was at all three of the revocation hearings. Let me ask you another question. I surveyed the complaint as best I could. Is there anything in this record which would suggest what the claimant says are his damages if, in fact, he did not get the required notice of the first hearing? Other than the request for $5 million, I don't know what there are. There was some contention made during the case that he would be entitled to lost profits by reason of him losing the CUP and the ability to operate. That's the loss of the CUP. Is there anything in the record that you know of that, in these pleadings, suggesting what damages he would have for his failure to go to the first hearing by not getting the appropriate California notice? No, there's not. And I don't think that he did incur any damages for that reason. Well, of course, one can give nominal damages for a failure to give appropriate notice, even if there are not damages. I just couldn't find even any nominal damages alleged. I think we would agree, Your Honor. If the floor is open, I would. Are there any further questions? No. I have no questions. Okay. I'll submit with that in mind. Thank you for your time. Okay. Any further questions from the panel? No. Thank you both. Thank you. You've utilized your time. Thank you. The case just argued is submitted for decision. That concludes the Court's calendar for this morning, and the Court stands adjourned.
judges: Schroeder, Fisher, Smith N. R.